**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **J.B.C, a minor by and though his parents and natural guardians, A.C. and J.C.** <br> 401 Sullivan Drive <br> Sayre, PA 18840, | **No.  4:24-CV-1249** |
| **Plaintiffs,** | **CIVIL ACTION** |
| v. | **PLAINTIFFS DEMAND TRIAL BY JURY** |
| **ATHENS AREA SCHOOL DISTRICT** <br> 100 Canal Street <br> Athens, PA 18810 | |
| and | |
| **CRAIG J. STAGE, ED.D.** <br> c/o Athens Area School District <br> 100 Canal Street <br> Athens, PA 18810 | |
| and | |
| **ATHENS AREA HIGH SCHOOL** <br> 401 W. Frederick Street <br> Athens, PA 18810 | |
| and | |
| **WILLIAM CLARK** <br> c/o Athens Area High School <br> 401 W. Frederick Street <br> Athens, PA 18810 | |
| and | |
| **JOHN B. SULLIVAN** <br> c/o Athens Area High School <br> 401 W. Frederick Street <br> Athens, PA 18810 | |
| and | |

**JOHN F. YOUNG**
705 S. 5TH Street
Towanda, PA 18848

    and

**COMMONWEALTH UNIVERSITY
OF PENNSYLVANIA AT
BLOOMSBURG**
400 E. 2nd Street
Bloomsburg, PA 17815

    and

**BASHAR W. HANNA, PH.D.**
c/o Commonwealth University of
Pennsylvania At Bloomsburg
400 E. 2nd Street
Bloomsburg, PA 17815

    and

**MICHAEL MCFARLAND, ED.D.**
c/o Commonwealth University of
Pennsylvania at Bloomsburg
400 E. 2nd Street
Bloomsburg, PA 17815

    and

**FRANK SHEPTOCK**
c/o Commonwealth University of
Pennsylvania At Bloomsburg
400 E. 2nd Street
Bloomsburg, PA 17815

    and

**MARGARET PELCHEY as parent and
natural guardian CHRISTOPHER
MITCHELL**
37 Rosebud Lane
Sayre, PA 18840

    and

| | |
|---|---|
| **CHRISTOPHER MITCHELL**<br>37 Rosebud Lane<br>Sayre, PA 18840<br><br>and<br><br>**NIKKI HADLOCK as parent and**<br>**natural guardian JADEN WRIGH**T<br>7609 Ulster Road<br>Ulster, PA 18850<br><br>and<br><br>**JADEN WRIGHT**<br>7609 Ulster Road<br>Ulster, PA 18850<br><br>and<br><br>**JOHN AND JANE DOEs #1 - #20**<br>(fictitious names), whose true identities are<br>currently unknown to Plaintiffs,<br><br>        **Defendants.** | |

## CIVIL ACTION COMPLAINT
## CIVIL RIGHTS

Plaintiffs, J.B.C., a minor by and though his parents and natural guardians, A.C. and J.C., by through their attorneys, Edelstein Law, LLP, aver as follows upon causes of action set forth below:

### I. PARTIES

1.      Plaintiffs, A.C. and J.C. (hereinafter "J.B.C.'s PARENTS") are adult individuals, husband and wife, and the parents and natural guardians of J.B.C., a minor, who at all times material hereto, resided at the address listed in the caption above.

2.     Plaintiff, J.B.C at all times material hereto, resided with his parents at the address listed in the caption above.

3.     Plaintiffs names are pseudonyms.  Pseudonyms are appropriate because the nature of the facts herein involve sexual attacks upon J.B.C.

4.     At all times material hereto, J.B.C. was a student and student-athlete at ATHENS AREA HIGH SCHOOL.

5.     Defendant, ATHENS AREA SCHOOL DISTRICT (hereinafter referred to as "ATHENS SCHOOL DISTRICT"), is an entity organized and existing under the laws of the Commonwealth of Pennsylvania and has offices at 100 Canal Street, Athens, PA 18810, which at all times referred to herein acted under color of law.  At all times material hereto, ATHENS AREA SCHOOL DISTRICT, acted through its officers, decision makers, policy makers, and other agents, including but not limited to Defendants, CRAIG STAGE, Ed.D., WILLIAM CLARK, JOHN B. SULLIVAN and JOHN F. YOUNG.

6.     The ATHENS SCHOOL DISTRICT functioned as the executive administrative agency responsible for the orderly administration of the schools within the ATHENS SCHOOL DISTRICT, including but not limited to the ATHENS AREA HIGH SCHOOL, and was the entity responsible for design, implementation, training and enforcement of administrative rules regarding the conduct of the schools within the ATHENS SCHOOL DISTRICT, as well as implementation of disciplinary responses,  policies, customs and procedures to be followed by administrators in the conduct of the day-to-day business of the schools within the ATHENS SCHOOL DISTRICT, including disciplinary responses, procedures, and implementation of same, which entity at all times material hereto employed Defendants, CRAIG STAGE, Ed.D., WILLIAM CLARK, JOHN B. SULLIVAN and JOHN F. YOUNG and supervised, controlled and/or directed and ratified their

activities. At all times material hereto, ATHENS AREA SCHOOL DISTRICT, acted through its officers, decision makers, policy makers, and other agents, including but not limited to Defendants, CRAIG STAGE, Ed.D., WILLIAM CLARK, JOHN B. SULLIVAN and JOHN F. YOUNG.

7.     Defendant CRAIG J. STAGE, ED.D. (hereinafter referred to as "STAGE") is a citizen and resident of the Commonwealth of Pennsylvania with a business address of 100 Canal Street, Athens, PA 18810.  STAGE was responsible for the orderly administration of the schools within the ATHENS SCHOOL DISTRICT, including but not limited to, ATHENS HIGH SCHOOL, and was the entity responsible for institution of administrative rules regarding the conduct of the schools within the ATHENS SCHOOL DISTRICT, as well as the design and implementation of disciplinary responses, policies, customs and procedures to be followed by administrators in the conduct of the day-to-day business of the schools within the ATHENS SCHOOL DISTRICT, including disciplinary responses, procedures, and implementation of same and was empowered by Defendant, ATHENS SCHOOL DISTRICT, to create and/or implement school policy.  STAGE at all times referred to herein acted under color of law. Suit is brought herein against STAGE in his official capacity and as an individual.

8.     Defendant, ATHENS AREA HIGH SCHOOL (hereinafter referred to as "ATHENS HIGH SCHOOL"), is an entity organized and existing under the laws of the Commonwealth of Pennsylvania and has offices at 401 W. Frederick Street, Athens, PA 18810, which at all times referred to herein acted under color of law and which was part of the ATHENS SCHOOL DISTRICT.  At all times material hereto, ATHENS HIGH SCHOOL, acted through its officers, decision makers, policy makers, and other agents, including but not limited to Defendants, CRAIG STAGE, Ed.D., WILLIAM CLARK, JOHN B. SULLIVAN and JOHN F. YOUNG.

9.     Defendant WILLIAM CLARK (hereinafter "CLARK") is a citizen and resident of the Commonwealth of Pennsylvania with a business address of 401 W. Frederick Street, Athens, PA 18810.  At all times material hereto, CLARK acted in his individual capacity and as a principal of ATHENS HIGH SCHOOL, was responsible for the day-to-day administration of the ATHENS SCHOOL DISTRICT policy involving implementation of disciplinary responses, policies, customs and procedures at all times material hereto at ATHENS HIGH SCHOOL, was employed by Defendant ATHENS SCHOOL DISTRICT, acting within the course and scope of his employment as Principal, and was empowered by Defendant, ATHENS SCHOOL DISTRICT, to create and/or implement school policy and at all times referred to herein acted under color of law. Suit is brought herein against CLARK in his official capacity.

10.     Defendant JOHN B. SULLIVAN (hereinafter "SULLIVAN") is a citizen and resident of the Commonwealth of Pennsylvania with a business address of 401 W. Frederick Street, Athens, PA 18810.  At all times material hereto, SULLIVAN acted in his individual capacity and as a Athletic Director of ATHENS HIGH SCHOOL, was responsible for the day-to-day administration of the ATHENS SCHOOL DISTRICT athletic department policies involving implementation of disciplinary responses, policies, customs and procedures at all times material hereto at ATHENS HIGH SCHOOL, was employed by Defendant ATHENS SCHOOL DISTRICT, acting within the course and scope of his employment as Athletic Director, and was empowered by Defendant, ATHENS SCHOOL DISTRICT, to create and/or implement school policy and at all times referred to herein acted under color of law. Suit is brought herein against SULLIVAN in his official capacity and as an individual.

11.     Defendant JOHN F. YOUNG (hereinafter "YOUNG") is a citizen and resident of the Commonwealth of Pennsylvania with an address of 705 S. 5th Street, Towanda, PA 18848.  At

all times material hereto, YOUNG acted in his individual capacity and as head football coach of ATHENS HIGH SCHOOL, was responsible for the day-to-day administration of the ATHENS SCHOOL DISTRICT football team policies involving implementation of disciplinary responses, policies, customs and procedures at all times material hereto at ATHENS HIGH SCHOOL, was employed by Defendant ATHENS SCHOOL DISTRICT, acting within the course and scope of his employment as head football coach, and was empowered by Defendant, ATHENS SCHOOL DISTRICT, to create and/or implement school policy and at all times referred to herein acted under color of law. Suit is brought herein against YOUNG in his official capacity and as an individual.

12.     Defendants ATHENS SCHOOL DISTRICT, STAGE, ATHENS HIGH SCHOOL, CLARK, SULLIVAN and YOUNG are hereinafter collectively referred to as the ATHENS DEFENDANTS.

13.     Defendant, COMMONWEALTH UNIVERSITY OF PENNSYLVANIA AT BLOOMSBURG (hereinafter referred to as "BLOOMSBURG"), is an entity organized and existing under the laws of the Commonwealth of Pennsylvania and has offices at 400 E. 2nd Street, Bloomsburg, PA 17815, which at all times referred to herein acted under color of law. At all times material hereto, BLOOMSBURG, acted through its officers, decision makers, policy makers, and other agents, including but not limited to Defendants, BASHAR W. HANNA, PH.D., MICHAEL MCFARLAND, ED.D, and FRANK SHEPTOCK.

14.     Defendant BASHAR W. HANNA, PH.D. (hereinafter referred to as "HANNA") is a citizen and resident of the Commonwealth of Pennsylvania with a business address of 400 E. 2nd Street, Bloomsburg, PA 17815. HANNA was responsible for the orderly administration of COMMONWEALTH UNIVERSITY OF PENNSYLVANIA, including but not limited to, BLOOMSBURG, and was the entity responsible for the institution of administrative rules

7

regarding the conduct of the schools within the COMMONWEALTH UNIVERSITY OF PENNSYLVANIA, including BLOOMSBURG, as well as the design and implementation of disciplinary responses, policies, customs and procedures to be followed by administrators in the conduct of the day-to-day business of the schools within the COMMONWEALTH UNIVERSITY OF PENNSYLVANIA, including BLOOMSBURG, including disciplinary responses, procedures, and implementation of same and was empowered by Defendant, COMMONWEALTH UNIVERSITY OF PENNSYLVANIA, to create and/or implement school policy. HANNA at all times referred to herein acted under color of law. Suit is brought herein against HANNA in his official capacity and as an individual.

15.    Defendant MICHAEL MCFARLAND, ED.D. (hereinafter "MCFARLAND") is a citizen and resident of the Commonwealth of Pennsylvania with a business address of 400 E. 2nd Street, Bloomsburg, PA 17815.  At all times material hereto, MCFARLAND acted in his individual capacity and as a Athletic Director of BLOOMSBURG, was responsible for the day-to-day administration of the BLOOMSBURG athletic department policies involving implementation of disciplinary responses, policies, customs and procedures at all times material hereto at BLOOMSBURG, was employed by Defendant BLOOMSBURG, acting within the course and scope of his employment as Athletic Director, and was empowered by Defendant, BLOOMSBURG, to create and/or implement school policy and at all times referred to herein acted under color of law. Suit is brought herein against MCFARLAND in his official capacity and as an individual.

16.    Defendant FRANK SHEPTOCK (hereinafter "SHEPTOCK") is a citizen and resident of the Commonwealth of Pennsylvania with a business address of 400 E. 2nd Street, Bloomsburg, PA 17815.  At all times material hereto, SHEPTOCK acted in his individual capacity

and as head football coach of BLOOMSBURG, was responsible for the day-to-day administration of the BLOOMSBURG football team policies involving implementation of disciplinary responses, policies, customs and procedures at all times material hereto at BLOOMSBURG, was employed by Defendant BLOOMSBURG, acting within the course and scope of his employment as head football coach, and was empowered by Defendant, BLOOMSBURG, to create and/or implement school policy and at all times referred to herein acted under color of law. Suit is brought herein against SHEPTOCK in his official capacity and as an individual.

17.     Defendants BLOOMSBURG, HANNA, MCFARLAND and SHEPTOCK are hereinafter collectively referred to as the BLOOMSBURG DEFENDANTS

18.     Defendant, MARGARET PELCHEY (hereinafter "MS. PELCHEY"), is an adult individual and citizen and resident of the Commonwealth of Pennsylvania with an address of 37 Rosebud Lane, Sayre, PA 18840, who all times material hereto was the parent and/or natural guardian of Defendant CHRISTOPHER MITHCELL.

19.     Defendant CHRISTOPHER MITCHELL (hereinafter "MITCHELL), is an adult individual and citizen and resident of the Commonwealth of Pennsylvania with an address of 37 Rosebud Lane, Sayre, PA 18840, who at all times material hereto was a minor child.

20.     Defendant, NIKKI HADLOCK (hereinafter "MS. HADLOCK"), is an adult individual and citizen and resident of the Commonwealth of Pennsylvania with an address of 7609 Ulster Road, Ulster, PA 18850, who all times material hereto was the parent and/or natural guardian of Defendant JADEN WRIGHT.

21.     Defendant JADEN WRIGHT (hereinafter "WRIGHT") is an adult individual and citizen and resident of the Commonwealth of Pennsylvania with an address of 7609 Ulster Road, Ulster, PA 18850, who at all times material hereto was a minor child.

9

22.     Defendants JOHN AND JANE DOEs #1 through #20, are currently unknown by actual name after a reasonable search with due diligence. Defendants DOES #1- #20 are believed and averred to have exposed J.B.C. to undue risk and actual harm by putting him in a situation where he could—and ultimately—would be assaulted by other students causing severe and permanent injuries, thus causing Plaintiff to be abused, bullied and harassed at the BLOOMSBURG football camp and subsequently at ATHENS HIGH SCHOOL. Said abuse, bullying and harassment, which caused Plaintiff to leave ATHENS SCHOOL DISTRICT and ATHENS HIGH SCHOOL, would not have occurred but for the Defendants' failure to exercise the appropriate control over the conduct of the students in their care and custody. Defendants DOES #1- #20 include, but are not limited to, administrators, school board members, teachers, counselors, coaches, former employees and/or charged agents/employees of Defendants ATHENS SCHOOL DISTRICT and BLOOMSBURG, and other individuals who conspired with others and/or are responsible for J.B.C.'s abuse, bullying and harassment.

23.     At all times material hereto, Defendants ATHENS SCHOOL DISTRICT and ATHENS HIGH SCHOOL were acting by and through their duly authorized actual and/or apparent agents, servants and employees, in particular, their principals, vice principals, school board, school board presidents, teachers, staff, supervisors, and/or team coaches and/or activity coordinators, acting within the course and scope of their actual and/or apparent agency and/or employment.

24.     At all times material hereto, Defendants ATHENS SCHOOL DISTRICT and ATHENS HIGH SCHOOL are directly and vicariously liable to Plaintiffs for injuries sustained as a result of negligence, gross negligence, outrageous conduct, and reckless misconduct as described further herein, as well as for violations of J.B.C.'s constitutional rights as described further herein,

by persons or entities whose conduct was under their control, or right to control which conduct directly and proximately caused all of Plaintiff's injuries.

25.    At all times material hereto, Defendant BLOOMSBURG was acting by and through their duly authorized actual and/or apparent agents, servants and employees, in particular, their deans, boards, presidents, teachers, staff, supervisors, and/or team coaches and/or activity coordinators, acting within the course and scope of their actual and/or apparent agency and/or employment.

26.    At all times material hereto, Defendants BLOOMSBURG was directly and vicariously liable to Plaintiffs for injuries sustained as a result of negligence, gross negligence, outrageous conduct, and reckless misconduct as described further herein, as well as for violations of J.B.C.'s constitutional rights as described further herein, by persons or entities whose conduct was under their control, or right to control which conduct directly and proximately caused all of Plaintiff's injuries.

## II. <u>JURISDICTION AND VENUE</u>

27.    This action is brought pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1988 and the First and Fourteenth Amendments of the United States Constitution. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331. The amount in controversy exceeds Seventy-Five Thousand ($75,000.00.) Dollars. Plaintiffs demand trial by jury pursuant to Fed.R.C.P. 38(b). This Court has venue over this matter because the cause of action arose in this judicial district. All Defendants reside in this judicial district and a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district. 28 U.S.C. §1391.

28.    This Court has pendant jurisdiction and supplemental jurisdiction over the related state claims in this matter.

29.     Plaintiffs also seek redress under the Pennsylvania common law theories of negligence against the Defendants.

**III.** **FACTS**

**A.** **CHRONOLOGY**

30.     At all times material hereto, J.B.C. was a student and student-athlete at ATHENS HIGH SCHOOL.

31.     At all times material hereto, J.B.C. was a member of the Athens High School football team.

32.     During the summer months of 2022, Defendant BLOOMSBURG hosted three-day football camps for high school student-athletes.

33.     ATHENS HIGH SCHOOL, ATHENS SCHOOL DISTRICT, CLARK, SULLIVAN and/or YOUNG arranged for the Athens High School football team to attend one of these camps.

34.     On July 25, 2022, the Athens High School football team, including J.B.C., met at Athens High School and boarded a school bus operated or provided by ATHENS HIGH SCHOOL and/or ATHENS SCHOOL DISTRICT to be transported to Bloomsburg.

35.     On July 25, 2022, the Athens High School football team, including J.B.C., arrived at BLOOMSBURG to participate in the camp.

36.     There were approximately 40 Athens High School football student-athletes participating in this event which included freshman, sophomores, juniors and seniors.

37.     YOUNG accompanied the student athletes individually and in his official capacity as head coach of the Athens High School football team.

38.     Upon information and belief, YOUNG was accompanied by three (3) assistant football coaches (Mr. Satterly, Mr. Kline and Mr. Hibbert) individually and in their official capacities as coaches and chaperones.

39.     Upon information and belief, upon arriving at BLOOMSBURG, the football team went directly to the football field where they participated in on-field scrimmages and games under the direct supervision of YOUNG and SHEPTOCK.

40.     Upon information and belief, those players not participating in on-field activities were left unattended and unsupervised on the sidelines.

41.     Upon information and belief, while on the sidelines, WRIGHT, a senior to be at Athens High School, threw water on J.B.C.  J.B.C., a sophomore to be, responded by throwing water on WRIGHT.

42.     WRIGHT subsequently threatened J.B.C. with physical retaliation.

43.     At or about 6:00 p.m., at the conclusion of football activities for the day, the Athens High School football team and coaches met in a building known as Monty's adjacent to the football field for room assignments.

44.     YOUNG gave each member of the football team a key card and the players were assigned to various townhouse units known as the Mount Olympus Apartments on Edwards Drive near the football stadium and field.

45.     The Mount Olympus Apartments are a part of the BLOOMSBURG campus.

46.     At the time YOUNG distributed the key cards, he allegedly instructed the student-athletes, in words or substance, that they should behave with "common decency," "be smart" and that room checks would be conducted at approximately 11:00 p.m.  He also told the student-athletes that they needed to be in their buildings by 11:00 p.m.

47.    Each of these townhouse units accommodated up to six (6) individuals.  The key card issued to each athlete, including J.B.C., allow access to the individual townhouse and to the individual room the student-athlete was assigned to.  The assigned key cards did not open other townhouse buildings or rooms.  J.B.C. shared the townhouse with five (5) other sophomores from the Athens High School football team.

48.    YOUNG and the other coaches/chaperones, stayed in townhouses located on Welsh Circle, which was located in front of and out of view of the student-athlete townhouses.



49.    J.B.C. and the coaches and other student-athletes went from Monty's to their townhouses and then were bussed to another campus location for dinner.  After dinner, they were bussed back to the townhouses.

50.    Upon arriving back at his townhouse at approximately 8:00 p.m., J.B.C. went to his room on the second floor to shower and change.  J.B.C. entered the shower room and locked the door behind him.

51.    While J.B.C. was in the shower, MITCHELL and WRIGHT, accompanied by approximately 15 other student-athletes from the Athens High School football team entered J.B.C.'s townhouse and went up to the second floor.

52.    Upon information and belief, while J.B.C. was in the shower, another student-athlete by the name of Joshua Nittinger allegedly picked the locked to the shower room.

53.    MITCHELL and WRIGHT entered the shower room, opened the shower curtain and began assaulting J.B.C.

54.    WRIGHT struck J.B.C. multiple times about his body with a flip-flop while MTICHELL punched and touched J.B.C. multiple times about his body, including his groin, penis and testicles, with his closed fists and hands.

55.    While attempting to defend himself, J.B.C. was able to temporarily stop the attack only to be punched again multiple times by MITCHELL in and about his groin, penis and testicles.

56.    During the attack, J.B.C. observed at least 10-15 fellow football players watching the assault take place.  After the attack, those individuals left the area of the attack.

57.    Upon information and belief, many of the 10-15 fellow football players used their phones to video record the attack.

58.    During the attack, J.B.C. was exposed completely naked in front of approximately 15-20 of his peers who accompanied MITCHELL and WRIGHT to the townhouse for the purpose of observing the retaliatory actions.

59.    After the attack, J.B.C. vomited several times.  Two (2) of J.B.C.'s townhouse-mates assisted J.B.C. by providing ice and medication for his pain.

60.    Due to the embarrassment of having been assaulted about his genitals and due to fear of retribution from MITCHELL and WRGIHT and other teammates after being warned to

remain silent about the attack, J.B.C. did not report the incident to YOUNG or any of the other coaches or his parents.

61.    At no time during or after the attack did J.B.C. see YOUNG or any of the other coaches/chaperones until the next morning while at the football camp.

62.    On or about August 19, 2022, another teammate informed his parents about the attack who subsequently informed J.B.C.'s PARENTS.  J.B.C.'s PARENTS took J.B.C. to the emergency room for treatment.

63.    On or about August 20, 2022, J.B.C.'s PARENTS notified the Pennsylvania State Police (PSP) of the attack and an official report was taken by the PSP on August 22, 2022.

64.    Upon information and belief, Defendant MITCHELL was not only removed from the football team but was arrested for and accepted a Consent Decree to aggravated assault.

65.    Upon information and belief, Defendant WRIGHT was not only removed from the football team but was arrested for and accepted a Consent Decree to aggravated assault.

66.    Subsequent to the disclosure of the events, Board action, and the arrests of MITCHELL and WRIGHT, a systematic course of conduct commenced against J.B.C., J.B.C.'s PARENTS, and J.B.C.'s three (3) younger siblings which included harassment and bullying by MTICHELL, WRIGHT, YOUNG and other students, teachers and staff of ATHENS SCHOOL DISTRICT and ATHENS HIGH SCHOOL.

67.    The events described heretofore were acknowledged and admitted to in a letter provided by STAGE to the New York State Public High School Athletic Association, Section IV Committee, in an effort to allow J.B.C. to participate in high school sports at his new school in New York by requesting Section IV grant a hardship waiver.

ATHENS AREA SCHOOL DISTRICT
401 WEST FREDERICK STREET, SUITE 1, ATHENS, PA  18810
570-888-7766 • FAX:  570-882-6250 • WWW.ATHENSASD.ORG

*"Building Foundations for Future Success."*

CRAIG STAGE, SUPERINTENDENT
JENNILEE SHORES, BUSINESS MANAGER

10/17/2023

Dear Section IV Committee,

As the Superintendent of the Athens Area School District, I am writing this letter to express my support for ▮▮▮▮▮▮▮▮▮▮ It is with a heavy heart that I write this letter, knowing that one of our students will be leaving the Athens student body. Over the past year, ▮▮ has faced significant emotional stress, especially following the attacks on him personally while attending a school-sponsored Football training camp at Bloomsburg University on June 27, 2022.
▮▮ was a victim of aggravated assault by his peers while participating in a school-sponsored football training camp. These attacks not only affect ▮▮ but also have a profound impact on the entire Cheresnowsky family.
In response to the family's voice being silenced, the community resorted to bullying tactics. Over the past year, the ▮▮▮▮▮▮ family has faced relentless attacks through social media posts created by paid employees of the Athens Area School District and certain members of the community who have minimized the severity of the crime in local newspapers.
▮▮ has personally experienced discrimination from his peers, faculty/staff members, and coaches at Athens. At the start of the 2022-2023 academic year, ▮▮ was mocked by other players on the football team by hitting their shoulders and claiming they were going to go to the police. These actions downplayed the severity of the attack ▮▮ experienced in the shower by two of the senior football members.  At an administrative meeting with the head Basketball coach/volunteer football coach, ▮▮ was accused of being a liar in front of the administration and the parents put in a formal complaint.
In January, ▮▮ attended a school-sponsored Winter dance with her friends. However, upon attendance, he was confronted by his attackers wearing "Not Guilty" t-shirts as their dance attire. This incident left ▮▮ feeling threatened and unsafe, as it was a blatant display of mocking and downplaying that has unfortunately been embraced by a large majority of the Athens community. As a result, ▮▮ experienced heightened anxiety and insecurity while walking in the halls at Athens High School, attending school events, and participating in sports. Despite these challenges, ▮▮ persevered and even finished the football season in 2022 and participated in the 2023 season. Unfortunately, despite having a new coaching staff in 2023, the community still embraced the attackers.  At the start of the season, underclassmen wore the senior attacker's jerseys and made sure to make a point to take pictures and flaunt that they would wear their numbers in their honor.
Despite both attackers agreeing to a Consent of Decree and being given consequences by the court of law, the ▮▮▮▮▮▮ family continues to be mocked and attacked by the Athens

*Board President ~ John Cheresnowsky    Board Secretary ~ Christine Middlcamp*
An equal opportunity employer in compliance with Title IX and Section 504

community. More recently, ██████ parents have been under attack by denouncers of their son's attack, requesting their removal from the Athens school community. We at Athens have tried to change this mindset within the community with anti-hazing and bullying training for staff, coaches, and athletes; however, this form of education will not provide an immediate solution. I am writing this letter to strongly advocate for an immediate solution for ██████ to be granted a hardship waiver, allowing him to fully engage in all activities at Waverly Central School District. It is my belief that ██████ does not have the same opportunities to participate without fear and reprisal at Athens. A fresh start at Waverly could potentially save ██████ and his family in beginning the healing process from the mental and emotional anguish they have been enduring since July 27, 2022.

I sincerely hope that the reviewing committee takes my recommendation into consideration regarding ██████ need to switch schools. Please do not hesitate to reach out if you have any questions or require further information. You may find my contact details listed below.

Thank you for your time and attention.

Yours faithfully,

Craig Stage
Superintendent
Athens Area School District

68.     As a result of the actionable conduct of the Defendants, J.B.C. and his three (3) younger siblings were forced to withdraw from ATHENS HIGH SCHOOL and began attending high school in a neighboring town in New York State.

69.     As a result of the actionable conduct of the Defendants, as more fully described below, J.B.C. suffered severe and permanent injuries to his genitals, to wit: bilateral testicular contusions; risk of infertility; risk of erectile dysfunction; and risk of future sexual dysfunction. J.B.C. also sustained severe and permanent injuries to his back, psychological injuries including post traumatic stress disorder, flashbacks, nightmares, multiple contusions.  J.B.C. also suffered internal injuries of an unknown nature; severe aches, pains, mental anxiety and anguish and severe shock to his entire nervous system and other injuries to the full extent of which are not yet known. He has in the past and will in the future undergo severe pain and suffering as a result of which he has been in the past and will in the future, be unable to attend to his usual duties and occupations, all to his great financial detriment and loss.  J.B.C. believes and therefore avers that his injuries are permanent in nature.

18

70.    As a result of the actionable conduct of the Defendants, as more fully described below, J.B.C. has been prevented from attending to his usual and daily activities and duties, and may be so prevented for an indefinite time in the future, all to his great detriment; suffered physical pain, mental anguish and humiliation and may continue to suffer same for an indefinite period of time in the future; has been compelled, in order to effectuate a cure for the aforesaid injuries, to expend large sums of money for medicine and medical attention and may be required to spend additional sums for the same purpose in the future.

71.    As a result of the actionable conduct of the Defendants, as more fully described below, the J.B.C.'s PARENTS as the parents and natural guardians of the J.B.C. have incurred expenses in the treatment of their child's injuries, and may in the future be caused to incur additional expenses as they have in the past; have incurred expenses in the education of their child as a result of his injuries; and have, to their great detriment and loss, been deprived of the society, companionship, services and assistance of their child, to which they are legally entitled.

## B.  POLICIES OF ATHENS SCHOOL DISTRICT AND ATHENS HIGH SCHOOL

72.    ATHENS SCHOOL DISTRICT has two (2) policies regarding "Field Trips" and "Class Trips."

73.    Regarding "Field Trips," Policy Manual, Section 100 Programs, Code 121, last revised February 19, 2019, reads, in part:[1]

      a.  The Board [Athens School District Board (hereinafter the "Board")] shall approve only those field trips that are planned to keep students out of the district overnight or longer.

      b.  The Superintendent shall approve all other filed trips.

---

[1] https://go.boarddocs.com/pa/athn/Board.nsf/goto?open&id=9WRMXD5D5C4B – last accessed 7/24/2024.

c.  Students on field trips remain under the supervision and responsibility of this Board and are subject to its rules and regulations.

d.  The Board does not endorse, support nor assume responsibility in any way for any district staff member who takes students on trips not approved by the Board or Superintendent. No staff member may solicit district students for such trips within district facilities or on district grounds without Board permission. The Board shall acknowledge all field trips under the "Board Communications and/or Information Items" section of the board meeting agenda. Field trips, whenever possible, will be acknowledged and approved at least sixty (60) days in advance of the trip.

e.  The Superintendent or designee shall develop administrative regulations for the operation of field trips.

f.  The safety and well-being of students will be protected at all times.

g.  Permissions of the parent/guardian is sought and obtained before any student may participate.

h.  The principal approves the purpose, itinerary and duration of each proposed trip.

i.  Each field trip is properly planned….

j.  No field trip will be approved unless it contributes to the achievement of specified instructional objectives.

74.  Upon information and belief, and after a review of prior Board minutes:

a.  Participation in the Bloomsburg football camp was not approved or acknowledged by the Board.

b.  STAGE did not approve the football camp field trip.

c.  The student-athletes were not supervised at all times.

d.  There are no known administrative regulations for the operation of field trips.

e.  There was no plan in place to assure the safety and well-being of the student-athletes relating to their attendance at the Bloomsburg football camp.

f.  No permission slips were obtained for participation in the Bloomsburg football camp.

g.  CLARK did not approve the purpose, itinerary and duration because no plans for participation in the Bloomsburg football camp were ever submitted by YOUNG.

h.  Participation in the Bloomsburg football camp was never approved.

75.  Regarding "Class Trips," Policy Manual, Section 200 Pupils, Code 231, last adopted April 26, 2011, last revised May 9, 2023, reads, in part:[2]

a.  The Board [Athens School District Board (hereinafter the "Board")] recognizes the value of student social events and class trips in enhancing and enriching the school experience for students.

b.  Class trips and social events that take place outside of school facilities require approval from the Superintendent.

c.  The Superintendent or designee shall develop procedures for the conduct of student social events and class trips which include the following:

i.  Designation of a staff member who shall be the Board employee responsible for the event.

---

[2] https://go.boarddocs.com/pa/athn/Board.nsf/goto?open&id=9WRMXD5D5C4B – last access 7/24/2024.

       ii.     Provision of adequate adult supervision or police protection, as required by the circumstances of the event.

      iii.    Formulation of rules and regulations governing the conduct and safety of all participants and distribution of such rules and regulations to all students and adults involved.

76.    Upon information and belief, and after a review of prior Board minutes:

    a.    Participation in the Bloomsburg football camp was not approved by the Superintendent.

    b.    No procedures were developed or documented for the conduct of the student-athletes while attending the Bloomsburg football camp.

    c.    Supervision was inadequate for the Bloomsburg football camp based on the location of the student-athlete housing arrangements in relation to the ability for YOUNG and the other coaches/chaperones to observe the student-athletes to assure their safety.

    d.    No rules and regulations governing the conduct and safety of all participants were ever formulated, let alone distributed to the student-athletes attending the Bloomsburg football camp.

77.    Upon information and belief, ATHENS HIGH SCHOOL has participated in numerous field trips and class trips, many of which included overnight, out-of-state and out-of-county programs.

78.    Upon information and belief, comprehensive planning was undertaken for these trips and comprehensive plans were submitted to ATHENS SCHOOL DISTRICT and ATHENS HIGH SCHOOL for approval.

79.     Upon information and belief, the comprehensive planning included mandatory parent/student meetings to discuss itineraries, conduct and disciplinary actions for any violations.

80.     Upon information and belief, the planning included comprehensive security measures which encompassed the hiring and retention of security personnel to monitor hotel floors to ensure the proper conduct of the students.

81.     Upon information and belief, YOUNG did not provide any of the aforementioned planning to ATHENS SCHOOL DISTRICT or ATHENS HIGH SCHOOL or CLARK or SULLIVAN nor did ATHENS SCHOOL DISTRICT, ATHENS HIGH SCHOOL, CLARK or SULLIVAN request same from YOUNG.

82.     ATHENS SCHOOL DISTRICT has policies in place for "Hazing" and "Bullying/Cyberbullying" Policy Manual, Section 200 Pupils, Code 247[3] and 249[4], respectively, last adopted April 26, 2011, last revised November 14, 2023, which read, in part:

> HAZING POLICY:
>
> a.  The purpose of this policy is to maintain a safe, positive environment for students and staff…
>
> b.  Hazing occurs when a person intentionally, knowingly, or recklessly, for the purpose of initiating, admitting, or affiliating a student with an organization… [o]r forces a student to do any of the following:
>
>   i.  Endure brutality of a physical nature…
>
>   ii.  Endure any other activity that creates a reasonable likelihood of bodily injury to the student.

---

[3] https://go.boarddocs.com/pa/athn/Board.nsf/goto?open&id=CK4UK37C46FC – last accessed 7/24/2022.
[4] https://go.boarddocs.com/pa/athn/Board.nsf/goto?open&id=CHJHRL480F22 – last access 7/24/2022.

c.   …[t]he district shall inform students, parents/guardians … of the district's policy … by means of … verbal instructions by the coach or sponsor at the start of the season…"

BULLYING/CYBERBULLYING POLICY:

a.   The Board is committed to providing a safe, positive, learning environment for district students.

b.   Bullying means an intentional … verbal, or physical act… [that] has the effect of doing any of the following:

   i.   Creating a threatening environment.

c.   The Code of Student, which shall contain this policy, shall be disseminated annually to students.

d.   Programs and activities shall provide district staff and students with appropriate training for effectively responding to, intervening in, and reporting incidents of bullying.

83.   Upon information and belief and despite policies for hazing and bullying being in place, prior to the events described herein, Athens School District did not have current hazing or bullying training for school staff, students and student-athletes.

84.   Upon information and belief and despite policies for hazing and bullying being in place, prior to the events described herein, school staff, students and student-athletes never received instruction regarding hazing and bullying.

85.   In a letter addressed to parents, students and the community in the aftermath of the attack becoming public, STAGE indicated that ATHENS SCHOOL DISTRICT would "[a]ddress the team culture through intensive and immediate training of coaching staff and students."

24

Training for the coaches was to be completed by "8/26/2022" and for the Varsity/JV football athletes training would be completed by "9/02/2022." An excerpt of the letter is embedded below:

ATHENS AREA SCHOOL DISTRICT
100 CANAL STREET, ATHENS, PA 18810
PHONE: 570-888-7766 • FAX: 570-882-6450 • WWW.ATHENSASD.ORG
"Building Foundations for Future Success."

CRAIG STAGE, SUPERINTENDENT
JENNILEE SHORES, BUSINESS MANAGER

Dear Wildcat Parents, Students, and Community:

The administration was notified on August 20th of several incidents on the Athens Area High School Varsity/JV Football team relating to bullying, hazing, and improper behavior that have caused physical and emotional harm to several student-athletes. The High School Administration immediately opened an investigation, met with students, and contacted the PA State Police Department per our policy. The administration has met with the state police and is cooperating fully with their investigation into the matter. At the same time, as we conduct an investigation, the district must follow state and federal laws, District Policy and maintain confidentiality and student privacy. Therefore, we will not share names, details, or specifics that may identify any involved person(s) involved.

The incidents that are being investigated occurred over a series of dates leading back to a mid-July football camp at Bloomsburg University and up to pre-season practices that took place in our school facilities. The district does not condone hazing or other actions that cause harm to fellow teammates and student-athletes. The consequences for the culmination of all incidents in question will be individually and as a team.

The district will handle the situation in two manners, 1) hold individuals responsible for student harm and 2) address the team culture through intensive and immediate training of coaching staff and students. The district will pursue disciplinary action for all students responsible for violating our policies in these incidents. All coaches must complete NFHS training on Bullying, Hazing, and Improper Behavior focused on identifying and preventing this behavior. The training for coaches will be completed by 8/26/2022. The Varsity/JV football athletes will also complete a training series on the impact and effects of bullying, hazing, and improper behavior on individuals by 9/02/2022. The Varsity/JV football coaching staff will establish norms and expectations that improve the football program's culture. We will not be canceling any football games. We do not feel that it is necessary to take punitive actions against football players who did not participate in these incidents, the marching band, and cheerleaders

86.    Upon information and belief, ATHENS SCHOOL DISTRICT, ATHENS HIGH SCHOOL and YOUNG had adopted no policies or plans for direct supervision of the student-athletes while they were not participating in on-field activities or after the completion of football camp activities at the end of the day.

87.    Upon information and belief, ATHENS SCHOOL DISTRICT, ATHENS HIGH SCHOOL and YOUNG did not employ any form of security or supervision to monitor the student-athletes when they were not in the plain view of YOUNG or his coaches/chaperones after the completion of football camp activities at the end of the day.

88.    Upon information and belief, YOUNG's only form of supervision was an announced room check at 11:00 p.m., leaving 40 adolescent student-athletes of varying maturity

levels to police themselves, wander the grounds, or, as the facts borne herein, attack and assault J.B.C.

89.     ATHENS SCHOOL DISTRICT, ATHENS HIGH SCHOOL and YOUNG lacked and failed to enforce the proper policies, procedures, rules, regulations and training to assure the safety of the student-athletes, including J.B.C., while attending the Bloomsburg football camp.

90.     Upon information and belief, ATHENS SCHOOL DISTRICT, ATHENS HIGH SCHOOL, STAGE, CLARK and SULLIVAN, knew, or should have known, that YOUNG and the football team were participating in the Bloomsburg football camp which qualified as a "Field Trip" or "Class Trip."

91.     Upon information and belief, ATHENS SCHOOL DISTRICT, ATHENS HIGH SCHOOL, STAGE, CLARK and SULLIVAN, knew, or should have known, that no safety and security plans had been submitted by YOUNG to assure the safety and security of the student-athletes, including J.B.C., attending the Bloomsburg football camp.

92.     Upon information and belief, ATHENS SCHOOL DISTRICT, ATHENS HIGH SCHOOL, STAGE, CLARK and SULLIVAN, despite having knowledge of the absence of a safety and security plan, allowed YOUNG to take the football team to the Bloomsburg football camp.

93.     Upon information and belief, ATHENS SCHOOL DISTRICT, ATHENS HIGH SCHOOL, STAGE, CLARK and SULLIVAN, despite having knowledge of the absence of adequate training and enforcement relating to field trips, class trips, hazing and bullying, allowed YOUNG to take the football team to the Bloomsburg football camp.

C. **POLICIES OF BLOOMSBURG**

94.    Upon information and belief, BLOOMSBURG did not have, nor did it provide, any specific policies, procedures, instructions, rules, codes of conduct or education relating to on- or off-field activities to either the student-athletes or the coaching staff of the Athens football team.

95.    Upon information and belief, BLOOMSBURG did not have, nor did it provide, any specific policies, procedures, instructions, rules, codes of conduct or education relating to on- or off-field conduct, bullying and/or hazing to either the student-athletes or the coaching staff of the Athens football team.

96.    The FAQs relating to BLOOMSBURG football camps do not include any information relating to policies, procedures, instructions, rules, codes of conduct or education relating to on- or off-field activities or conduct, bullying and/or hazing.[5]



---

[5] https://bloomsburgfootballcamps.totalcamps.com/FAQs - last accessed 7/24/2024.

97.     Upon information and belief, BLOOMSBURG and/or its police department did not have any policies, procedures, rules or plans in place to provide security, surveillance or monitoring of the high school student-athletes amid their housing complex.

98.     Upon information and belief, BLOOMSBURG, HANNA, MCFARLAND and SHEPTOCK knew, or should have known, that the Athens football team, along with at least three (3) other high school football teams, were participating in the Bloomsburg football camp.

99.     Upon information and belief, BLOOMSBURG, HANNA, MCFARLAND and SHEPTOCK knew, or should have known, that at least 160 adolescent student-athletes were participating in the Bloomsburg football camp.

100.    Upon information and belief, BLOOMSBURG, HANNA, MCFARLAND and SHEPTOCK did not require any safety, security, conduct, bullying or hazing plans be submitted by YOUNG, ATHENS SCHOOL DISTRICT or ATHENS HIGH SCHOOL.

101.    Upon information and belief, BLOOMSBURG, HANNA, MCFARLAND and SHEPTOCK knew, or should have known, that no safety, security, conduct, bullying or hazing plans had been submitted by YOUNG to assure the safety and security of the Athens football team student-athletes, including J.B.C., attending the Bloomsburg football camp.

102.    Upon information and belief, BLOOMSBURG, HANNA, MCFARLAND and SHEPTOCK, despite having knowledge of the absence of safety, security, conduct, bullying or hazing plans, allowed the Athens football team, including J.B.C., to participate in the Bloomsburg football camp.

103.    Upon information and belief, BLOOMSBURG, HANNA, MCFARLAND and SHEPTOCK, despite lacking specific policies, procedures, instructions, rules, codes of conduct or education relating to off-field activities, allowed the camp to commence.

104.    Upon information and belief, BLOOMSBURG, HANNA, MCFARLAND and SHEPTOCK, despite lacking specific policies, procedures, instructions, rules, codes of conduct or education relating to off-field conduct, allowed the camp to commence.

**COUNT I**
**VIOLATION OF 42 U.S.C. § 1983**
*Plaintiffs v. Athens Defendants*

105.    Plaintiffs incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

106.    The Fourteenth Amendment to the United States Constitution protects Plaintiffs such as J.B.C. from the deprivation of life, liberty, or property, without due process of law and guarantees J.B.C. equal protection of the law. The Fourteenth Amendment requires the ATHENS DEFENDANTS to establish policies and practices to protect J.B.C. from known harms and known patterns of constitutional deprivations.

107.    The Fourteenth Amendment also requires the ATHENS DEFENDANTS to not maintain and enforce deficient policies, practices, and customs which deprive J.B.C. of his constitutional rights to equal protection and due process under the law, including but not limited to failing to train employees and failing to supervise employees.

108.    The ATHENS DEFENDANTS failed, with deliberate indifference, to provide a safe custodial setting for J.B.C., by failing to properly train, supervise, and discipline staff at ATHENS SCHOOL DISTRICT and ATHENS HIGH SCHOOL.  As a proximate result of the ATHENS DEFENDANTS' policies, practices and customs, the staff at ATHENS SCHOOL DISTRICT and ATHENS HIGH SCHOOL, acting under color of state law, subjected J.B.C. to physical assault and emotional abuse, a failure to protect from harm, and other abuses alleged in this Complaint.  The ATHENS DEFENDANTS, and their respective employees and agents

violated J.B.C.'s Fourteenth Amendment rights when allowing him to be subjected to physical assault and harassment, and/or endorsing the abusive environment, and/or taking no action to prevent such physical assault.

109.   The ATHENS DEFENDANTS' failure to properly train and supervise their employees, demand proper safety and security planning for field trips and class trips, and failure to enforce harassment and bullying policies was pervasive and was done with deliberate indifference towards the rights of J.B.C.

110.   If the ATHENS DEFENDANTS had properly trained and supervised their employees, demanded proper safety and security planning for the participation in the Bloomsburg football camp and demanded enforcement of the harassment and bullying polices, J.B.C.'s constitutional rights after the physical assault would not have been violated and the continued injury and abusive actions towards J.B.C. would not have occurred.

111.   The ATHENS DEFENDANTS' failure to properly train and supervise their employees caused J.B.C. to suffer constitutional deprivations, including a violation of his due process and equal protection rights.

112.   The ATHENS DEFENDANTS' failure to train and supervise its employees, among other failures, was a widespread custom, policy, and/or practice of the ATHENS DEFENDANTS.

113.   The ATHENS DEFENDNATS acted or failed to act under the color of state law, when they were required to keep minors, including J.B.C., safe from harm.

114.   The ATHENS DEFENDANTS and its employees, agents, administrators, teachers, and coaches knew, or should have known, of the propensity for violent acts against any of the students-athletes, including J.B.C., and purposefully took no action to prevent them. The inaction and deliberate indifference of the ATHENS DEFENDANTS regarding the propensity for violent

30

acts is an effective acceptance of such anticipated behavior. The ATHENS DEFENDANTS condoned or ratified said conduct through their actions and inactions.

115.    The ATHENS DEFENDANTS and its agents and employees, knew of the deficiencies in its customs, policies, and procedures which violated J.B.C.'s right to be free from harm.  This right was violated by the ATHENS DEFENDANTS' customs or policies of failing to require the submission of proper plans to assure the safety and security of the student-athletes, including J.B.C.

116.    The ATHENS DEFENDANTS created and/or assumed a "special relationship" with J.B.C. in that they were expected to exercise a heightened duty of care to their student-athletes.

117.    The ATHENS DEFENDANTS created a presumptive "special relationship" in that high school student-athletes, such as J.B.C., are impressionable.

118.    Here, the ATHENS DEFENDANTS, most importantly, YOUNG, were responsible for providing reasonable supervision to their respective student-athletes, including J.B.C., under their direction and supervision.

119.    The ATHENS DEFENDANT'S "special relationship" was further enhanced in that attendance at the Bloomsburg football camp was expected of all members of the ATHENS HIGH SCHOOL football team's student-athletes, including J.B.C.

120.    The Bloomsburg football camp was not considered, and should not be considered, compulsory school attendance mandated by the Commonwealth of Pennsylvania.

121.    Furthermore, the ATHENS DEFENDANTS generated a state-created danger in that:

a.  The ATHENS DEFENDANTS created a relationship with their football team's student-athletes, including J.B.C., by allowing the ATHENS HIGH SCHOOL football team to attend the Bloomsburg football camp;

b.  The ATHENS HIGH SCHOOL football team was comprised of approximately 40 adolescent student-athletes and was going to be joined by approximately 120 other adolescent student-athletes from three (3) other high schools. There being no safety and security plan in place created an ultimately foreseeable and fairly direct means for harm to the student-athletes, including J.B.C.

c.  THE ATHENS DEFENDANTS willfully disregarded the student-athletes' safety by not providing a safety and security plan and by not adequately supervising the student-athletes or instructing them in policies and procedures relating to bullying and harassment.

d.  The ATHENS DEFENDANTS exercised their authority by allowing the ATHENS HIGH SCHOOL football team to attend the Bloomsburg football camp which thereby created an opportunity that otherwise would not have existed for the assault and injuries to occur to J.B.C.

122.    The ATHENS DEFENDANTS' acts and omissions as set forth in the preceding paragraphs of this Complaint shock the conscience, deprived J.B.C. of his Fourteenth Amendment right to equal protection of the laws and due process, and caused J.B.C. grave physical, emotional, psychological and other harm.

123.    The acts and omissions by the ATHENS DEFENDANTS, by and through their agents, were made in a willful disregard for the safety of J.B.C. and a reckless or callous indifference for his protected rights

124.    The acts and omissions by the ATHENS DEFENDANTS, by and through their agents, as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of J.B.C.'s damages and injuries and are therefore liable to J.B.C. under 42 U.S.C. § 1983 and the Fourteenth Amendment.

**WHEREFORE**, Plaintiffs, J.B.C., a minor by and though his parents, A.C. and J.C. demand judgment against the ATHENS DEFENDANTS in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

### COUNT II
### VIOLATION OF 42 U.S.C. § 1983
### *Plaintiffs v. Bloomsburg Defendants*

125.    Plaintiffs incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

126.    The Fourteenth Amendment to the United States Constitution protects Plaintiffs such as J.B.C. from the deprivation of life, liberty, or property, without due process of law and guarantees J.B.C. equal protection of the law. The Fourteenth Amendment requires the BLOOMSBURG DEFENDANTS to establish policies and practices to protect J.B.C. from known harms and known patterns of constitutional deprivations.

127.    The Fourteenth Amendment also requires the BLOOMSBURG DEFENDANTS to not maintain and enforce deficient policies, practices, and customs which deprive J.B.C. of his constitutional rights to equal protection and due process under the law, including but not limited to failing to train employees and failing to supervise employees.

128.    The BLOOMSBURG DEFENDANTS failed, with deliberate indifference, to provide a safe custodial setting for J.B.C., by failing to properly train, supervise, and discipline

staff at BLOOMSBURG.   As a proximate result of the BLOOMSBURG DEFENDANTS'

policies, practices and customs, the staff at BLOOMSBURG, acting under color of state law,

subjected J.B.C. to physical assault and emotional abuse, a failure to protect from harm, and other

abuses alleged in this Complaint.   The BLOOMSBURG DEFENDANTS, and their respective

employees and agents violated J.B.C.'s Fourteenth Amendment rights when allowing him to be

subjected to physical assault and harassment, and/or endorsing the abusive environment, and/or

taking no action to prevent such physical assault.

129.    The BLOOMSBURG DEFENDANTS' failure to properly train and supervise their

employees, demand proper safety and security planning by the ATHENS DEFENDANTS, and

failure to instruct or enforce harassment and bullying policies was pervasive and was done with

deliberate indifference towards the rights of J.B.C.

130.    The BLOOMSBURG DEFENDANTS' failure to properly train and supervise their

employees caused J.B.C. to suffer constitutional deprivations, including a violation of his due

process and equal protection rights.

131.    The ATHENS DEFENDANTS' failure to train and supervise its employees, among

other failures, was a widespread custom, policy, and/or practice of the BLOOMSBURG

DEFENDANTS.

132.    The BLOOMSBURG DEFENDNATS acted or failed to act under the color of state

law, when they were required to keep minors, including J.B.C., safe from harm.

133.    The BLOOMSBURG DEFENDANTS and their employees, agents, administrators,

teachers, and coaches knew, or should have known, of the propensity for violent acts against any

of the students-athletes, including J.B.C., and purposefully took no action to prevent them. The

inaction and deliberate indifference of the BLOOMSBURG DEFENDANTS regarding the

propensity for violent acts is an effective acceptance of such anticipated behavior. The BLOOMSBURG DEFENDANTS condoned or ratified said conduct through their actions and inactions.

134.    The BLOOMSBURG DEFENDANTS and its agents and employees, knew of the deficiencies in its customs, policies, and procedures which violated J.B.C.'s right to be free from harm.  This right was violated by the BLOOMSBURG DEFENDANTS' customs or policies of failing to require the submission of proper plans to assure the safety and security of the student-athletes, including J.B.C.

135.    The BLOOMSBURG DEFENDANTS created and/or assumed a "special relationship" with J.B.C. in that they were expected to exercise a heightened duty of care to the student-athletes attending their football camp.

136.    The BLOOMSBURG DEFENDANTS created a presumptive "special relationship" in that high school student-athletes, such as J.B.C., are impressionable.

137.    Here, the BLOOMSBURG DEFENDANTS, most importantly, SHEPTOCK, were responsible for providing reasonable supervision to the student-athletes attending their football camp, including J.B.C., under their direction and supervision.

138.    Furthermore, the BLOOMSBURG DEFENDANTS generated a state-created danger in that:

     a.  The BLOOMSBURG DEFENDANTS created a relationship with the football teams' student-athletes, including J.B.C., by allowing the ATHENS HIGH SCHOOL football team to attend the Bloomsburg football camp;

     b.  The ATHENS HIGH SCHOOL football team was comprised of approximately 40 adolescent student-athletes and was going to be joined by approximately 120

other adolescent student-athletes from three (3) other high schools. There being no safety and security plan provided to the BLOOMSBURG DEFENDANTS created an ultimately foreseeable and fairly direct means for harm to the student-athletes, including J.B.C.

c. The BLOOMSBURG DEFENDANTS willfully disregarded the student-athletes' safety by not providing their own safety and security plan and by not adequately supervising the student-athletes or instructing them in policies and procedures relating to bullying and harassment.

d. The BLOOMSBURG DEFENDANTS exercised their authority by allowing the multiple football teams to attend the Bloomsburg football camp which thereby created an opportunity that otherwise would not have existed for the assault and injuries to occur to J.B.C.

139. The BLOOMSBURG DEFENDANTS' acts and omissions as set forth in the preceding paragraphs of this Complaint shock the conscience, deprived J.B.C. of his Fourteenth Amendment right to equal protection of the laws and due process, and caused J.B.C. grave physical, emotional, psychological and other harm.

140. The acts and omissions by the BLOOMSBURG DEFENDANTS, by and through their agents, were made in a willful disregard for the safety of J.B.C. and a reckless or callous indifference for his protected rights.

141. The acts and omissions by the BLOOMSBURG DEFENDANTS, by and through their agents, as described in the preceding paragraphs of this Complaint, were the direct and proximate cause of J.B.C.'s damages and injuries and are therefore liable to J.B.C. under 42 U.S.C. § 1983 and the Fourteenth Amendment.

**WHEREFORE**, Plaintiffs, J.B.C., a minor by and though his parents, A.C. and J.C. demand judgment against the BLOOMSBURG DEFENDANTS in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

**COUNT III**
**VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972**
**(20 U.S.C. § 1681(a))**
***Plaintiffs v. Athens Defendants***

142.    Plaintiffs incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

143.    Title IX of the Education Amendments of 1972, 20 U.S.C.S. § 1681 et seq., provides, in relevant part, that no person in the United States, shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

144.    If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference subjects its students to harassment.

145.    A federal funding recipient may be held liable for the harassment of a victim when the recipient exercises substantial control over the harasser and the context in which the harassment occurs. For example, if the continued harassment occurs on school grounds, within the context of a school-related function, or otherwise while in the course and scope of an environment controlled by the federal funding recipient.

146.    While a recipient school cannot be held vicariously liable for the specific acts of sexual harassment or violence, they can instead be held liable under Title IX for their own conduct.

147.    Sexual harassment is a form of discrimination for purposes of Title IX of the Education Amendments of 1972, 20 U.S.C.S. § 1681 et seq., and Title IX proscribes harassment

with sufficient clarity to serve as a basis for a damages action. Moreover, an implied private right of action exists under Title IX of the Education Amendments of 1972, 20 U.S.C.S. § 1681 et seq., and money damages are available in such suits.

148.    Upon information and belief, the ATHENS SCHOOL DISTRICT is a recipient of federal education funding.

149.    As stated above, Plaintiff was in the care and custody of the ATHENS DEFENDANTS when he was physically and sexually abused by a fellow student, also in the care and custody of the ATHENS DEFENDANTS, in an environment controlled by the ATHENS DEFENDANTS —an out-of-state athletic team trip sponsored and supervised by the ATHENS DEFENDANTS.

150.    J.B.C. was subject to sexual abuse in the form of a sexual assault wherein a fellow student, MITCHELL, punched and touched J.B.C.'s groin, penis and testicles, making skin-to-skin contact with J.B.C.

151.    The ATHENS DEFENDANTS' employees permitted this abuse to occur at a school function due to their deliberate indifference towards the supervision of J.B.C., the perpetrator MITCHELL, and the other student-athletes in the care and custody of the ATHENS DEFENDANTS.   The acts and omissions of the ATHENS DEFENDANTS created an environment where this type of sexual abuse was a foreseeable consequence of their actions.

152.    After the assault and sexual assault was reported to the ATHENS DEFENDANTS, a Title IX complaint was initiated and the matter became public knowledge.

153.    J.B.C.'s abuse was publicized within the Athens community and he and his family became subject to ridicule, name-calling, bullying, torment, and harassment from other students, teacher and staff of the ATHENS SCHOOL DISTRICT.

154.    A school safety plan was initiated after multiple requests by J.B.C.'s parents, however, the ATHENS DEFENDANTS allowed the harassment to continue and worsen in severity.

155.    Due to the sexual abuse and subsequent harassment J.B.C. and his younger siblings endured, he and they were forced to transfer out of the school district.

156.    The ATHENS DEFENDANTS' failure to protect J.B.C. from abuse and harassment and their failure to mitigate the circumstances surrounding the events thereto, rises to the level of deliberate indifference.

157.    The deliberate indifference, omissions, actions, and failures to act described above caused J.B.C. to suffer a physical and sexual assault and harassment.

158.    The ATHENS DEFENDANTS, by and through the acts of its employees, agents, servants, staff members, teachers, and coaches had a duty to protect the life, liberty, and property of J.B.C., and because of their failure to take any precautionary measures to supervise children in their care and custody, Plaintiff suffered a physical and sexual assault and harassment.

**159.**    As a direct and proximate cause of the affirmative acts and omissions of the ATHENS DEFENDANTS and its employees, agents, servants, staff members, teachers, and coaches that rise to such a level of deliberate indifference, J.B.C. suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

**WHEREFORE**, Plaintiffs, J.B.C., a minor by and though his parents, A.C. and J.C. demand judgment against the ATHENS DEFENDANTS in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

### *State Law Claims*

### COUNT IV
### VICARIOUS LIABILITY
*Plaintiffs v. Athens School District and Athens High School*

160.    Plaintiffs incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

161.    STAGE, CLARK, SULLIVAN, YOUNG and JOHN AND JANE DOEs #1 through #20 (hereinafter "INDIVIDUAL ATHENS ACTORS") engaged in unpermitted, harmful, and unlawful conduct which facilitated the assault and subsequent abuse of J.B.C.  Said conduct was undertaken while the INDIVIDUAL ATHENS ACTORS were employees and/or agents of ATHENS SCHOOL DISTRICT, while in the course and scope of employment with the ATHENS SCHOOL DISTRICT and/or ATHENS HIGH SCHOOL, and/or was ratified by the ATHENS SCHOOL DISTRICT and/or ATHENS HIGH SCHOOL.

162.    Prior to or during the time that the INDIVIDUAL ATHENS ACTORS engaged in the conduct alleged above, the ATHENS SCHOOL DISTRICT and/or ATHENS HIGH SCHOOL knew, had reason to know, or were otherwise on notice of the unpermitted, harmful, unlawful, and negligent conduct of the INDIVIDUAL ATHENS ACTORS.  The ATHENS SCHOOL DISTRICT and/or ATHENS HIGH SCHOOL failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of criminal and/or sexual assault, hazing, harassment, bullying, and the subsequent future abuse by the INDIVIDUAL ATHENS ACTORS.

40

Furthermore, at no time during the period of time alleged did the ATHENS SCHOOL DISTRICT and/or ATHENS HIGH SCHOOL have in place a system or procedure to supervise and/or monitor the students in their care on athletic trips to ensure that criminal misconduct did not occur.

163. The ATHENS SCHOOL DISTRICT and/or ATHENS HIGH SCHOOL knowing acquiescence and silence with respect to the known, or reasonably knowable, negligence acts and omissions of the INDIVIDUAL ATHENS ACTORS constituted a course of conduct through which acts of criminal assault occurred or were likely to occur.

164. Through their failure to timely require plans as heretofore set forth, and for all of the other reasons set forth in this Complaint including, without limitation, their failure to take the steps necessary to prevent the occurrence of such reprehensible acts, the ATHENS SCHOOL DISTRICT and/or ATHENS HIGH SCHOOL ratified said actions and omissions and, accordingly, are vicariously liable for the actions of its agents, employees, volunteers, staff members, administrators, teachers, coaches, and representatives, including the INDIVIDUAL ATHENS ACTORS.

165. As a result of the above-described conduct, J.B.C. has suffered and will continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented and will continue to be prevented from performing his daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

**WHEREFORE**, Plaintiffs, J.B.C., a minor by and though his parents, A.C. and J.C. demand judgment against the ATHENS SCHOOL DISTRICT and/or ATHENS HIGH SCHOOL

in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

## COUNT V
## INDECENT ASSAULT
### *Plaintiffs v. Athens School District and Athens High School*

166.    Plaintiffs incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

167.    ATHENS SCHOOL DISTRICT and ATHENS HIGH SCHOOL, by its failures enumerated herein, created an environment that allowed J.B.C. to be physically, indecently and/or sexually assaulted by MITCHELL.

168.    School culture is a microcosm of the larger societal culture, which means that issues of power and control found within the larger culture contribute to conditions in schools that may lead to sexual abuse.[6]

169.    MITCHELL, a senior-to-be, exercised power and control over J.B.C., a sophomore-to-be, in his retaliatory attack.

170.    MITCHELL intentionally, and without consent, punched and touched J.B.C. in his groin, penis and testicles.

171.    Upon information and belief, MITCHELL received gratification by his exercise of power and control and his punching and touching the genitals of J.B.C.

172.    ATHENS SCHOOL DISTRICT and ATHENS HIGH SCHOOL knew, or should have known, that by allowing 40 adolescent student-athletes to remain unsupervised at a football camp, situations of indecent assault of a sexual nature may, and indeed did, occur.

---

[6] https://ospi.k12.wa.us/sites/default/files/2023-08/erins-law-report-final-ada.pdf - last accessed 7/24/2024

**WHEREFORE**, Plaintiffs, J.B.C., a minor by and though his parents, A.C. and J.C. demand judgment against the ATHENS SCHOOL DISTRICT and/or ATHENS HIGH SCHOOL in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

<u>COUNT VI</u>
<u>VICARIOUS LIABILITY</u>
*Plaintiffs v. Bloomsburg*

173.    Plaintiffs incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

174.    HANNA, MCFARLAND, SHEPTOCK and JOHN AND JANE DOEs #1 through #20 (hereinafter "INDIVIDUAL BLOOMSBURG ACTORS") engaged in unpermitted, harmful, and unlawful conduct which facilitated the assault and subsequent abuse of J.B.C.  Said conduct was undertaken while the INDIVIDUAL BLOOMSBURG ACTORS were employees and/or agents of BLOOMBSURG, while in the course and scope of employment with BLOOMSBURG, and/or was ratified by the BLOOMSBURG.

175.    Prior to or during the time that the INDIVIDUAL ACTORS engaged in the conduct alleged above, BLOOMSBURG knew, had reason to know, or were otherwise on notice of the unpermitted, harmful, unlawful, and negligent conduct of the INDIVIDUAL BLOOMSBURG ACTORS.  BLOOMSBURG failed to take reasonable steps and failed to implement reasonable safeguards to avoid acts of criminal assault, hazing, harassment, bullying, and the subsequent future abuse by the INDIVIDUAL BLOOMSBURG ACTORS. Furthermore, at no time during the period of time alleged did BLOOMSBURG have in place a system or procedure to supervise and/or monitor the student-athletes in their care at their football camp to ensure that criminal misconduct did not occur.

176.    BLOOMSBURG'S knowing acquiescence and silence with respect to the known, or reasonably knowable, negligence acts and omissions of the INDIVIDUAL BLOOMSBURG ACTORS constituted a course of conduct through which acts of criminal assault occurred or were likely to occur.

177.    Through their failure to timely require plans as heretofore set forth, and for all of the other reasons set forth in this Complaint including, without limitation, their failure to take the steps necessary to prevent the occurrence of such reprehensible acts, BLOOMSBURG ratified said actions and omissions and, accordingly, are vicariously liable for the actions of its agents, employees, volunteers, staff members, administrators, teachers, coaches, and representatives, including the INDIVIDUAL BLOOMSBURG ACTORS.

178.    As a result of the above-described conduct, J.B.C. has suffered and will continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented and will continue to be prevented from performing his daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

**WHEREFORE**, Plaintiffs, J.B.C., a minor by and though his parents, A.C. and J.C. demand judgment against the BLOOMSBURG in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

**COUNT VII**
**NEGLIGENCE**
*Plaintiffs v. Sullivan and Young*

179.    Plaintiffs incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

180.    At all relevant times, SULLIVAN and YOUNG owed a duty to maintain a safe educational, athletic and school environment for the students and student-athletes of the ATHENS HIGH SCHOOL football team, including J.B.C.

181.    At all relevant times, SULLIVAN and YOUNG had a duty to protect and safeguard J.B.C. from hurt, harm, and danger while he was under their supervision.

182.    At all relevant times, SULLIVAN and YOUNG occupied a position of *in loco parentis*, and were under a duty to protect J.B.C., and to provide him with safety and supervision akin to that which would have been provided by his own parents.

183.    At all relevant times, SULLIVAN and YOUNG had a duty to ensure that they were properly supervising the student-athletes in their custody and care to protect them from the exact type of abuse to which J.B.C. was subject.

184.    At all relevant times, SULLIVAN and YOUNG had a duty to provide for J.B.C.'s basic human needs, including the safety of his person and his educational and athletic environment while attending the Bloomsburg football camp.

185.    By accepting custody of J.B.C., SULLIVAN and YOUNG established an *in loco parentis* relationship with J.B.C. and in so doing, owed J.B.C. a duty to protect J.B.C. from injury.

186.    At all relevant times, SULLIVAN and YOUNG knew or should have known that their lack of supervision and their lack of a safety and security plan and their lack of training and

instruction in bullying and harassment policies and procedures created a risk of foreseeable harm their student-athletes, including J.B.C.

187. At all relevant times, SULLIVAN and YOUNG failed to adequately and properly:

    a. Prepare, submit and enact a safety and security plan for the ATHENS HIGH SHOOL football team's participation in the Bloomsburg football camp;

    b. Supervise the student-athletes in their care while in attendance at the Bloomsburg football camp; and

    c. Instruct the student-athletes in the policies and procedures of the ATHENS SCHOOL DISTRICT'S bullying and hazing policies.

188. The negligent, reckless, intentional, outrageous, deliberately and recklessly indifferent and unlawful acts and omissions of SULLIVAN and YOUNG as set forth above and herein, consisted of, *inter alia*:

    a. Permitting MITCHELL and WRIGHT to assault J.B.C.;

    b. Permitting student-athletes to wander and roam about the Bloomsburg housing units unsupervised;

    c. Failing to employ a safety and security plan for the student-athletes attending the Bloomsburg football camp;

    d. Failing to adopt, enforce and/or follow adequate policies and procedures for the protection and reasonable supervision of the student-athletes who attended the Bloomsburg football camp, including J.B.C.;

    e. Failing to implement, enforce, and/or follow adequate protective and supervisory measures for the protection of the student-athletes at the Bloomsburg football camp, including J.B.C.;

f.  Creating an environment that facilitated physical and criminal abuse of the student-athletes, including J.B.C.;

g.  Failing to adopt, enforce and/or follow policies and procedures to protect the student-athletes against harmful influence and contact by other students, including MITCHELL and WRIGHT; and

h.  Failing to prevent the assault that was committed by MITCHELL and WRIGHT on J.B.C.

189.   As a proximate and direct result of SULLIVAN'S and YOUNG'S negligence and/or reckless conduct described herein, J.B.C. was subjected to physical abuse and assault in an environment SULLIVAN and YOUNG knew or reasonably should have known such physical abuse and assault was likely to occur.

190.   As a proximate and direct result of SULLIVAN'S and YOUNG'S negligence and/or reckless conduct described herein, the harassment of J.B.C. became ongoing and continued, unabated, for months, resulting in J.B.C. and his siblings leaving the school district.

191.   As a proximate and direct result of SULLIVAN'S and YOUNG'S negligence and/or reckless conduct described herein, J.B.C. was harmed as a result and has sustained physical and emotional injuries, embarrassment, mental anguish, pain and suffering, and loss of enjoyment of life and life's pleasures.

192.   J.B.C. has been and will likely, into the future, be caused to incur medical expenses and J.B.C. may likely incur a loss of earning capacity in the future.

193.   SULLIVAN and YOUNG knew or should have known about the severe risk of their failure to take any appropriate precautions outlined above and acted with a reckless disregard

for such risk for which J.B.C. is entitled to and hereby seeks punitive damages pursuant to the requirements of Pennsylvania law.

194.    SULLIVAN'S and YOUNG'S actions and failures as described herein are outrageous and were done recklessly with a conscious disregard of the risk of harm to J.B.C. for which J.B.C. is entitled to and hereby seeks punitive damages.

**WHEREFORE**, Plaintiffs, J.B.C., a minor by and though his parents, A.C. and J.C. demand judgment against the SULLIVAN and YOUNG in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

**COUNT VIII**
**NEGLIGENCE**
***Plaintiffs v. McFarland and Sheptock***

195.    Plaintiffs incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

196.    At all relevant times, MCFARLAND and SHEPTOCK owed a duty to maintain a safe educational, athletic and school environment for the students and student-athletes of the ATHENS HIGH SCHOOL football team, including J.B.C.

197.    At all relevant times, MCFARLAND and SHEPTOCK had a duty to protect and safeguard J.B.C. from hurt, harm, and danger while he was under their supervision.

198.    At all relevant times, MCFARLAND and SHEPTOCK occupied a position of *in loco parentis*, and were under a duty to protect J.B.C., and to provide him with safety and supervision akin to that which would have been provided by his own parents.

199.    At all relevant times, MCFARLAND and SHEPTOCK had a duty to ensure that they were properly supervising the student-athletes in their custody and care to protect them from the exact type of abuse to which J.B.C. was subject.

200.    At all relevant times, MCFARLAND and SHEPTOCK had a duty to provide for J.B.C.'s basic human needs, including the safety of his person and his educational and athletic environment while attending the Bloomsburg football camp.

201.    By accepting custody of J.B.C., MCFARLAND and SHEPTOCK established an *in loco parentis* relationship with J.B.C. and in so doing, owed J.B.C. a duty to protect J.B.C. from injury.

202.    At all relevant times, MCFARLAND and SHEPTOCK knew or should have known that their lack of supervision and their lack of a safety and security plan and their lack of training and instruction in bullying and harassment policies and procedures created a risk of foreseeable harm their student-athletes, including J.B.C.

203.    At all relevant times, MCFARLAND and SHEPTOCK failed to adequately and properly:

> a.  Prepare, submit and enact a safety and security plan for the teams and student-athletes attending the Bloomsburg football camp;
>
> b.  Supervise the student-athletes in their care while in attendance at the Bloomsburg football camp; and
>
> c.  Instruct the student-athletes in the policies and procedures of the BLOOMSBURG bullying and hazing policies.

204.    The negligent, reckless, intentional, outrageous, deliberately and recklessly indifferent and unlawful acts and omissions of MCFARLAND and SHEPTOCK as set forth above and herein, consisted of, *inter alia*:

    a.  Failing to have safeguards in place to prevent MITCHELL and WRIGHT from assaulting J.B.C.;

    b.  Permitting student-athletes to wander and roam about the Bloomsburg housing units unsupervised;

    c.  Failing to employ a safety and security plan for the student-athletes attending the Bloomsburg football camp;

    d.  Failing to adopt, enforce and/or follow adequate policies and procedures for the protection and reasonable supervision of the student-athletes who attended the Bloomsburg football camp, including J.B.C.;

    e.  Failing to implement, enforce, and/or follow adequate protective and supervisory measures for the protection of the student-athletes at the Bloomsburg football camp, including J.B.C.;

    f.  Creating an environment that facilitated physical and criminal abuse of the student-athletes, including J.B.C.;

    g.  Failing to adopt, enforce and/or follow policies and procedures to protect the student-athletes against harmful influence and contact by other students, including MITCHELL and WRIGHT; and

    h.  Failing to prevent the assault that was committed by MITCHELL and WRIGHT on J.B.C.

205.    As a proximate and direct result of MCFARLAND'S and SHEPTOCK'S negligence and/or reckless conduct described herein, J.B.C. was subjected to physical abuse and assault in an environment MCFARLAND and SHEPTOCK knew or reasonably should have known such physical abuse and assault was likely to occur.

206.    As a proximate and direct result of MCFARLAND'S and SHEPTOCK'S negligence and/or reckless conduct described herein, J.B.C. was harmed as a result and has sustained physical and emotional injuries, embarrassment, mental anguish, pain and suffering, and loss of enjoyment of life and life's pleasures.

207.    J.B.C. has been and will likely, into the future, be caused to incur medical expenses and J.B.C. may likely incur a loss of earning capacity in the future.

208.    MCFARLAND and SHEPTOCK knew or should have known about the severe risk of their failure to take any appropriate precautions outlined above and acted with a reckless disregard for such risk for which J.B.C. is entitled to and hereby seeks punitive damages pursuant to the requirements of Pennsylvania law.

209.    MCFARLAND'S and SHEPTOCK'S actions and failures as described herein are outrageous and were done recklessly with a conscious disregard of the risk of harm to J.B.C. for which J.B.C. is entitled to and hereby seeks punitive damages.

**WHEREFORE**, Plaintiffs, J.B.C., a minor by and though his parents, A.C. and J.C. demand judgment against the MCFARLAND and SHEPTOCK in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

<u>COUNT IX</u>
<u>VIOLATION OF PENNSYLVANIA'S PARENTAL RESPONSIBILITY ACT</u>
<u>(23 Pa. C.S. § 5501, *et seq.*)</u>
*Plaintiffs v. Pelchey and Hadlock*

210.    Plaintiffs incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

211.    At all times material hereto, PELCHEY was the mother and natural guardian of MITCHELL, who was a minor under the age or 18.

212.    At all times material hereto, HADLOCK was the mother and natural guardian of WRIGHT, who was a minor under the age or 18.

213.    MITCHELL and WRIGHT each committed a tortious act, namely assault, against J.B.C. on or about July 25, 2022, while attending the Bloomsburg football camp as members and student-athletes of the ATHENS HIGH SCHOOL football team.

214.    J.B.C. suffered injuries to his back and genitals as a result of the assault by MITCHELL and WRIGHT.

215.    MITCHELL and WRIGHT accepted a "consent decree" from the Court of Common Pleas for aggravated assault.

216.    Any parent whose child is found liable or is adjudged guilty by a court of competent jurisdiction of a tortious act shall be liable to the person who suffers the injury.

**WHEREFORE**, Plaintiffs, J.B.C., a minor by and though his parents, A.C. and J.C. demand judgment against PELCHEY and HADLOCK each in a sum to be determined by the court in compensatory damages, exclusive of pre-judgment interest, post-judgment interests and costs.

## COUNT X
## BATTERY
### *Plaintiffs v. Mitchell and Wright*

217.    Plaintiffs incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

218.    Battery requires actual harmful or offensive contact with another person.

219.    On or about July 25, 2022, MITCHELL and WRIGHT, student-athletes of the ATHENS HIGH SCHOOL football team, intentionally and in retaliation to earlier events, negligently and recklessly forcibly removed J.B.C., without J.B.C.'s consent, from a shower stall after gaining access to the shower room through a locked door.

220.    WRIGHT negligently and recklessly struck J.B.C., without J.B.C.'s consent, multiple times about his body with a flip-flop causing multiple injuries to J.B.C.

221.    MITCHELL negligently and recklessly struck J.B.C., without J.B.C.'s consent, multiple times with a closed fist about J.B.C.'s body, including in his penis and testicles.

222.    As a proximate and direct result of MITHELL'S and WRIGHT'S negligent and/or reckless assault and battery, J.B.C. suffered injuries as heretofore described that required medical treatment.

223.    As a proximate and direct result of MITHELL'S and WRIGHT'S negligent and/or reckless assault and battery, J.B.C. suffered emotional and psychological injuries that required counseling.

224.    As a proximate and direct result of MITHELL'S and WRIGHT'S negligent and/or reckless conduct described herein, J.B.C. was harmed as a result and has sustained physical and emotional injuries, embarrassment, mental anguish, pain and suffering, and loss of enjoyment of life and life's pleasures.

225.    J.B.C. has been and will likely, into the future, be caused to incur medical expenses and J.B.C. may likely incur a loss of earning capacity in the future.

226.    MITHELL and WRIGHT knew or should have known that their negligent and/or reckless assault and battery would cause such injuries and harm as outlined above yet they acted with a reckless disregard for such risk for which J.B.C. is entitled to and hereby seeks punitive damages pursuant to the requirements of Pennsylvania law.

227.    MITHELL'S and WRIGHT'S actions as described herein are outrageous and were done recklessly with a conscious disregard of the risk of harm to J.B.C. for which J.B.C. is entitled to and hereby seeks punitive damages.

**WHEREFORE**, Plaintiffs, J.B.C., a minor by and though his parents, A.C. and J.C. demand judgment against the MITHELL and WRIGHT in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

## COUNT XI
## INDECENT ASSAULT
### *Plaintiffs v. Mitchell*

228.    Plaintiffs incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

229.    School culture is a microcosm of the larger societal culture, which means that issues of power and control found within the larger culture contribute to conditions in schools that may lead to sexual abuse.[7]

230.    MITCHELL, a senior-to-be, exercised power and control over J.B.C., a sophomore-to-be, in his retaliatory attack.

---

[7] https://ospi.k12.wa.us/sites/default/files/2023-08/erins-law-report-final-ada.pdf - last accessed 7/24/2024

231.    MITCHELL intentionally, and without consent, punched and touched J.B.C. in his groin, penis and testicles.

232.    Upon information and belief, MITCHELL received gratification by his exercise of power and control and his punching and touching the genitals of J.B.C.

**WHEREFORE**, Plaintiffs, J.B.C., a minor by and though his parents, A.C. and J.C. demand judgment against MITCHELL in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars in compensatory damages and punitive damages, exclusive of pre-judgment interest, post-judgment interests and costs.

**Respectively submitted,**

**EDELSTEIN LAW, LLP**

**BY:** _____*/s/ Stephen J. Pokiniewski*_____
**STEPHEN J. POKINIEWSKI, ESQUIRE**
**Attorney ID No.: PA 45186**
**230 S. Broad Street, Suite 900**
**Philadelphia, PA 19102**
**Ph.: (215) 893-9311**
**Fax: (215) 893-9310**
**E-Mail: sjp@edeslsteinlaw.com**
***Attorney for Plaintiffs***