# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

J.B.C., a minor by and through his
parents and natural guardians, A.C.
and J.C.,

        Plaintiff,

        v.

ATHENS AREA SCHOOL
DISTRICT, et al.,

        Defendants.

CIVIL ACTION NO. 4:24-cv-01249

(SAPORITO, J.)

FILED
WILKES BARRE

SEP 15 2025

PER_____
DEPUTY CLERK

## MEMORANDUM

This is a federal civil rights action, brought under 42 U.S.C. § 1983. The plaintiff is a student-athlete and member of a high school football team who alleges that he was assaulted by other student-athletes while attending a football camp at Bloomsburg University along with his team.

Now before the court is a motion to dismiss, filed by the University Defendants.[1] Doc. 48. The motion is fully briefed and ripe for decision.

---

[1] The "University Defendants" are: Commonwealth University of Pennsylvania at Bloomsburg ("Bloomsburg University"); Bashar W. Hanna, Ph.D., president of Bloomsburg University, sued in both his personal and official capacities; Michael McFarland, Ed.D., athletic director at Bloomsburg University, sued in both his personal and official capacities; and Frank Sheptock, head football coach at Bloomsburg University, sued in both his personal and official capacities.

Doc. 55; Doc. 62.

## I.  FACTUAL BACKGROUND

During the summer months of 2022, Bloomsburg University hosted three-day football camps for high school student-athletes. Athens Area School District had arranged for the Athens Area High School football team to attend one of these camps.

On July 25, 2022, the Athens Area football team, including J.B.C., a rising sophomore at the time, met at the high school and boarded a school bus operated or provided by the Athens Area School District to be transported to Bloomsburg. There were approximately forty Athens Area student-athletes participating in this event, including freshmen, sophomores, juniors, and seniors. They were accompanied and supervised by John F. Young, head coach of the Athens Area football team, and three assistant coaches.

Later that same day, the Athens Area football team, including J.B.C., arrived at Bloomsburg University to participate in the camp. Upon arriving, the Athens Area football team went directly to the football field, where they joined approximately 120 other adolescent student-athletes from three other high school football teams to participate in on-

field scrimmages and games under the supervision of the head coach of Bloomsburg University's football team, Frank Sheptock, and their respective high school team coaches

While not participating in on-field activities, players were left unattended and unsupervised. While on the sidelines, Jaden Wright, a rising senior at Athens Area High School, threw water on J.B.C., who responded by throwing water on Wright. Wright subsequently threatened J.B.C. with physical retaliation.

At about 6:00 p.m., when football activities concluded for the day, the Athens Area football team and coaches met in a building adjacent to the football field—a campus dining facility known as "Monty's"—for room assignments. The players were each assigned to a room in one of several townhouse-style apartments—the "Mount Olympus Apartments"—located on the Bloomsburg University campus near the football stadium and field. Each townhouse accommodated up to six individuals in separate rooms. Young gave each athlete, including J.B.C., a keycard programmed to allow access to an individual townhouse and an individual room within that townhouse. The assigned keycards did not open other townhouse buildings or rooms. J.B.C. was assigned to share a

townhouse with five other sophomores from the Athens Area football team.

J.B.C., the other student-athletes, and their coaches walked from Monty's to their townhouses, and then they were bused from there to another campus location for dinner. After dinner, they were bused back to the townhouses.

Upon returning to his townhouse at approximately 8:00 p.m., J.B.C. went to his room on the second floor to shower and change. J.B.C. entered the shower room and locked the door behind him.

While J.B.C. was in the shower, Wright and Christopher Mitchell, another rising senior on the Athens Area football team, accompanied by approximately fifteen other student-athletes from the same team, entered J.B.C.'s townhouse and went up to the second floor. After one of those other student-athletes picked the lock to the shower room door, Mitchell and Wright entered the shower room, opened the shower curtain, and began assaulting J.B.C. Wright struck J.B.C. multiple times about his body with a flip-flop shoe while Mitchell punched and touched J.B.C. multiple times about his body, including, his groin, penis, and testicles, with his closed fists and hands. During the attack, J.B.C.

observed at least ten to fifteen fellow football team members watching the attack, some of whom recorded the attack using their cellphones. During the attack, J.B.C. was exposed completely naked in front of approximately fifteen to twenty of his peers who had accompanied Mitchell and Wright into the townhouse for the purpose of observing the attack.

After the attack, Mitchell, Wright, and the other student-athletes left the area. J.B.C. vomited several times. Two of his housemates assisted J.B.C. by providing him with ice and pain medication.

Due to the embarrassment of having been assaulted about his genitals and due to fear of retribution from Mitchell and Wright and other teammates after being warned to remain silent about the attack, J.B.C. refrained from reporting the incident to Young or any of the other coaches, or to his own parents.

On or about August 19, 2022, another teammate informed his own parents about the attack, and those parents informed J.B.C.'s parents. J.B.C.'s parents then took J.B.C. to a hospital emergency room for treatment.

On or about August 20, 2022, J.B.C.'s parents notified the

Pennsylvania State Police ("PSP") of the attack, and an official report was taken by the PSP on August 22, 2022. Mitchell and Wright were not only removed from the football team, but both were arrested and ultimately accepted juvenile consent decrees to aggravated assault.[2]

After the disclosure of this incident, related school board action, and the arrests of Mitchell and Wright, J.B.C. and his family became the target of a systematic course of harassment and bullying by Mitchell, Wright, Young, and other students, teachers, and staff of Athens Area High School and Athens Area School District.

Ultimately, as a result of this concerted harassment and bullying, J.B.C. and his three siblings were compelled to withdraw from Athens Area High School and to begin attending high school in a neighboring town in New York State. As a result of the attack itself, J.B.C. suffered severe and permanent injuries.

---

[2] A Pennsylvania juvenile consent decree is "analogous to the accelerated rehabilitative disposition program available to adults. . . . A consent decree does not involve a finding of guilt; instead, the delinquency proceedings are suspended while the juvenile undergoes a period of probation supervision and, assuming successful completion, the petition is dismissed." *Muhammad ex rel. J.S. v. Abington Twp. Police Dep't*, 37 F. Supp. 3d 746, 753–54 (E.D. Pa. 2014) (citations and internal quotation marks omitted).

## II.  LEGAL STANDARDS

### A. Rule 12(b)(1) Standard

A Rule 12(b)(1) motion is the proper mechanism for raising the issue of whether Eleventh Amendment immunity bars the exercise of federal jurisdiction. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)). The plaintiff bears the burden of establishing the existence of subject matter jurisdiction when challenged under Rule 12(b)(1). *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). A defendant may challenge the existence of subject matter jurisdiction in one of two fashions: it may attack the complaint on its face or it may attack the existence of subject matter jurisdiction in fact, relying on evidence beyond the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Where a defendant attacks a complaint as deficient on its face, "the court must consider the allegations of the complaint as true." *Mortensen*, 549 F.2d at 891. "In deciding a Rule 12(b)(1) facial attack, the court may only consider the allegations contained in the complaint and the exhibits attached to the

complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and 'undisputably authentic' documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss." *Medici v. Pocono Mountain Sch. Dist.*, No. 09-CV-2344, 2010 WL 1006917, at *2 (M.D. Pa. Mar. 16, 2010). However, when a motion to dismiss attacks the existence of subject matter jurisdiction in fact, "no presumptive truthfulness attaches to plaintiff's allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. This case falls into the former category.

### B. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir.

2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Phila.*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cnty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III. DISCUSSION

In his amended complaint, the plaintiff has asserted substantive due process and equal protection claims under 42 U.S.C. § 1983 and

various state-law tort claims against three sets of defendants: (1) the University Defendants;[3] (2) the School District Defendants;[4] and (3) the Student/Parent Defendants.[5] The School District Defendants were recently dismissed from this action pursuant to a settlement agreement. The Student/Parent Defendants have answered the complaint, and they have not joined the instant motion by the University Defendants.

The plaintiff's claims against the University Defendants are set forth in three counts of the ten-count amended complaint. In Count II, the plaintiff asserts § 1983 substantive due process and equal protection claims against all four of the University Defendants. In Count V, the plaintiff asserts a state-law vicarious liability claim against Bloomsburg University, seeking to hold it liable for the allegedly tortious actions of

_____

[3] *See supra* note 1.

[4] The "School District Defendants" are: Athens Area School District; Craig J. Stage, Ed.D., superintendent of the school district, sued in both his personal and official capacities; Athens Area High School; William Clark, principal of the high school, sued in his official capacity only; John B. Sullivan, athletic director of the high school, sued in both his personal and official capacities; and John F. Young, head football coach at the high school, sued in both his personal and official capacities.

[5] The "Student/Parent Defendants" are: Christopher Mitchell, a rising Athens Area senior on the football team; Margaret Pelchey, parent and natural guardian of Christopher Mitchell; Jaden Wright, another rising Athens Area senior on the football team; and Nikki Hadlock, parent and natural guardian of Jaden Wright.

Hanna, McFarland, Sheptock, and other unidentified employees of the university.[6] In Count VII, the plaintiff asserts state-law negligence claims against McFarland and Sheptock. For relief, the plaintiff seeks an award of compensatory and punitive damages. He does not request any declaratory or injunctive relief.

### A. Bloomsburg University

In Count II, the plaintiff seeks to hold Bloomsburg University liable for damages under § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but

---

[6] Count V does not expressly articulate the basis for imposition of vicarious liability, but we presume it to be a state-law tort theory of liability, as "vicarious liability is inapplicable to . . . § 1983 suits." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("*Respondeat superior* or vicarious liability will not attach under § 1983."); *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) ("§ 1983 does not allow vicarious liability . . . .").

instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, a plaintiff must establish that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

It is well settled that neither the Commonwealth of Pennsylvania nor Bloomsburg University, which is an agency of the Commonwealth, is a "person" amenable to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) ("[A] State is not a person within the meaning of § 1983"); *Skehan v. Bd. of Tr. of Bloomsburg State Coll.*, 538 F.2d 53, 62 (3d Cir. 1976) (en banc) (recognizing "that state colleges such as Bloomsburg State College are agencies of the Commonwealth"); *Seybert v. W. Chester Univ.*, 83 F. Supp. 2d 547, 553 n.13 (E.D. Pa. 2000) ("[A]s arms of the state, [a PASSHE university] and [a university official] acting in his official capacity are not 'persons' under § 1983."); *Musila v.*

*Lock Haven Univ.*, 97 F. Supp. 2d 384, 390 (M.D. Pa. 2013) (holding that a PASSHE university "is not a 'person' for purposes of a 42 U.S.C. § 1983 action"). *See generally Bradley v. W. Chester Univ.*, 880 F.3d 643, 647 & n.3 (3d Cir. 2018) ("[The Pennsylvania State System of Higher Education ('PASSHE')] comprises fourteen universities: Bloomsburg, California, Cheyney, Clarion, East Stroudsburg, Edinboro, Indiana, Kutztown, Lock Haven, Mansfield, Millersville, Shippensburg, Slippery Rock, and West Chester.") (citing 24 P.S. § 20-2002-A(a)).

Moreover, absent abrogation by Congress or waiver by the state, the Eleventh Amendment to the United States Constitution provides that states, and their constituent agencies or departments, are immune from suit in federal court. *Pennhurst State. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984); *Nails v. Pa. Dep't of Transp.*, 414 Fed. App'x 452, 455 (3d Cir. 2011) (per curiam); *Nat'l Indem. Co. v. Grimm*, 760 F. Supp. 489, 494 (W.D. Pa. 1991). Bloomsburg University is one such state agency entitled to Eleventh Amendment immunity from suit. *Bradley*, 880 F.3d at 654 ("[B]oth PASSHE and [one of its constituent universities] are entitled to Eleventh Amendment immunity and thus are not subject to suits for damages in federal court."); *Borrell v. Bloomsburg Univ.*, 955 F.

Supp. 2d 390, 399 (M.D. Pa. 2013) ("Bloomsburg, as a state university organized under the Pennsylvania State System of Higher Education, is entitled to Eleventh Amendment immunity.") (citation omitted); *Boykin v. Bloomsburg Univ.*, 893 F. Supp. 378, 394 (M.D. Pa. 1995) ("[A] suit against the Commonwealth of Pennsylvania or one of its agencies, such as Bloomsburg University, is proscribed by the Eleventh Amendment."). The Commonwealth of Pennsylvania has expressly declined to waive its sovereign immunity in federal court. *See* 42 Pa. Cons. Stat. Ann. § 8521(b); *Nails*, 414 Fed. App'x at 455; *Seybert*, 83 F. Supp. 2d at 553; *Nat'l Indem. Co. v. Grimm*, 760 F. Supp. 489, 494 (W.D. Pa. 1991).

Accordingly, the plaintiff's claims against Bloomsburg University will be dismissed for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1),[7] or, in the alternative, for failure to state a claim upon

---

[7] The moving defendants' brief explicitly requests dismissal of the official-capacity claims against Hanna, McFarland, and Sheptock on Eleventh Amendment immunity grounds. It does not so clearly articulate that same argument with respect to the university itself, however, limiting its express arguments to whether Bloomsburg University is a "person" under § 1983. Because the parties' briefs address this same defense with respect to the official-capacity claims against the individual defendants, we find it appropriate to consider this issue *sua sponte* with respect to Bloomsburg University itself. Although it is not required to do so, a court may properly raise an Eleventh Amendment issue *sua sponte*.

*(continued on next page)*

which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

## B. Official-Capacity § 1983 Claims

Count II of the amended complaint also asserts the same § 1983 claims against Hanna, McFarland, and Sheptock in their official capacities as university employees. But "[i]ndividual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity because 'official-capacity suits generally represent only another way of pleading an action' against the state." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)); *see also Sanders v. Pa. State Sys. of Higher Educ.*, 811 Fed. App'x 139, 141–42 (3d Cir. 2020) (affirming dismissal of claims against PASSHE and a PASSHE university "because they are protected by Eleventh Amendment sovereign immunity"); *Borrell*, 955 F. Supp. 2d at 399 (quoting *Betts*, 621 F.3d at 254).

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.

---

*Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 417 (3d Cir. 2003); *Richard E. Pierson Constr. Co. v. Phila. Reg'l Port Auth.*, 348 F. Supp. 3d 410, 413 (E.D. Pa. 2018).

*Will*, 491 U.S. at 71 (citations omitted).

Moreover, the Supreme Court has held "that neither a State *nor its officials acting in their official capacities* are 'persons' under § 1983." *Id.* (emphasis added); *see also McCauley v. Univ. of V.I.*, 618 F.3d 232, 240–41 (3d Cir. 2010) (holding that university officials, acting within the scope of their employment at a public university and sued in their official capacities, were not "persons" for purposes of § 1983); *Seybert*, 83 F. Supp. 2d at 553 n.13 ("[A]s arms of the state, [a PASSHE university] and [a university official] acting in his official capacity are not 'persons' under § 1983.").

Accordingly, the plaintiff's claims against the individual University Defendants—Hanna, McFarland, and Sheptock—in their official capacities will be dismissed for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), or, in the alternative, for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### C. Personal-Capacity § 1983 Claims

Count II asserts these same § 1983 claims against Hanna, McFarland, and Sheptock in their personal capacities as well. But it is

well established that "[c]ivil rights claims cannot be premised on a theory

of *respondeat superior*. Rather, each named defendant must be shown,

via the complaint's allegations, to have been personally involved in the

events or occurrences which underlie a claim." *Millbrook v. United States*,

8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As previously

explained by the Third Circuit:

> A defendant in a civil rights action must have personal
> involvement in the alleged wrongs . . . . [P]ersonal
> involvement can be shown through allegations of
> personal direction or of actual knowledge and
> acquiescence. Allegations of participation or actual
> knowledge and acquiescence, however, must be made
> with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

The amended complaint fails to adequately allege personal

involvement by Hanna, McFarland, or Sheptock with respect to the July

25, 2022, incident in which two other Athens Area high school students

assaulted J.B.C. in the shower of a campus apartment. The only

allegations in the amended complaint with respect to Hanna or

McFarland concern their roles as university administrators and their

general responsibility for the business and policies of the university and

its athletic department, respectively. In addition to similar allegations of

general responsibility for the policies and conduct of the university football program, including the summer camp for high school football teams, the amended complaint alleges only that Sheptock personally supervised on-field scrimmages and games earlier in the day, hours before the assault occurred. There are no facts alleged to suggest that any of the individual University Defendants were directly involved in any way in the assault on J.B.C., directed that the assault occur, or had actual knowledge of and acquiesced in the assault.

Personal involvement by a supervising defendant, however, may also be found where he or she caused a subordinate to violate another's constitutional rights through the execution of an official policy or settled informal custom. *See Sample v. Diecks*, 885 F.2d 1099, 1117–18 (3d Cir. 1989).

> [T]o hold a supervisor liable because his policies or practices led to [a constitutional] violation, the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of that [constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury results from the policy or practice.

*Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001) (citing *Sample*,

885 F.2d at 1118). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986).

The plaintiff's claims against Hanna, McFarland, and Sheptock appear to be grounded in such a theory of supervisory liability. In support, the amended complaint alleges, in general and conclusory fashion, that these defendants failed to adopt and implement, or require the School District Defendants to submit, any safety, security, conduct, bullying, or hazing policies or plans before letting the football camp commence, and that they permitted the football camp to commence despite the absence of any specific policies, procedures, instructions, rules, codes of conduct, or education relating to off-field conduct.[8] But the amended complaint fails to identify any specific policy or practice that these defendants failed to employ, and it fails to allege any facts to

---

[8] We note that, despite alleging that the university had no policy requiring a school district to submit such policies or plans before commencing the football camp, the complaint does not allege that no such policies existed. To the contrary, the amended complaint recites in detail specific language from the school district's existing policies concerning field trips, class trips, hazing, and bullying or cyberbullying. *See* Am. Compl. ¶¶ 72–84, Doc. 43.

establish that existing university, department, or team policies and
practices created an unreasonable risk that the substantive due process
and equal protection rights of a student-athlete would be violated, that
any of these three supervisory defendants was aware of any unreasonable
risk that individuals under their supervision might violate the
constitutional rights of a student-athlete in circumstances similar to
those alleged here, that they were indifferent to such a risk, or that the
constitutional injuries alleged by J.B.C. resulted from the specified
policies or practices of the university. *See Beers-Capitol*, 256 F.3d at 134.

We find particular salience in the amended complaint's failure to
allege any facts whatsoever to establish the defendants' actual subjective
awareness of an unreasonable risk of constitutional injury: The amended
complaint fails to allege a pattern of similar prior incidents or injuries,
and it fails to allege any facts to support a finding that the risk of
constitutionally cognizable harm was so great and so obvious that,
standing alone, the risk and the defendants' failure to respond to it are
sufficient to impose supervisory liability. *See id.* at 134–35 ("The
knowledge element of deliberate indifference is subjective, not objective
knowledge, meaning that the official must actually be aware of the

existence of the excessive risk; it is not sufficient that the official should
have been aware.").

Accordingly, the plaintiff's claims against the individual University
Defendants—Hanna, McFarland, and Sheptock—in their personal
capacities will be dismissed for failure to state a claim upon which relief
can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### D. State-Law Tort Claims

The plaintiff has also asserted a variety of state-law tort claims
against the University Defendants and the Student/Parent Defendants.[9]
Where a district court has dismissed all claims over which it had original
jurisdiction, the court may decline to exercise supplemental jurisdiction
over state law claims. 28 U.S.C. § 1367(c)(3). Whether the court will

---

[9] In addition to the federal civil rights claims discussed above,
Count V of the amended complaint asserts a state-law "vicarious
liability" tort claim against Bloomsburg University, and Count VII
asserts state-law negligence claims against McFarland and Sheptock.
The amended complaint also asserts several state-law tort claims against
the Student/Parent Defendants: Count IX asserts a common law battery
claim against Mitchell and Wright arising out of their July 25, 2022,
assault on J.B.C.; Count VIII asserts a statutory tort claim arising out of
that same incident against the then-juvenile assailant's parents, Pelchey
and Hadlock, under Pennsylvania's Parental Liability Act, 23 Pa. Cons.
Stat. Ann. § 5502; and Count X asserts an indecent assault or sexual
battery claim against Mitchell only, arising out of the same incident.

exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7. Upon consideration of these factors and the record before us, we find nothing to distinguish this from the usual case. Therefore, the remaining state-law claims will be dismissed *without prejudice* pursuant to 28 U.S.C. § 1367(c)(3).

### E. Leave to Amend

The Third Circuit has instructed that, if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile, *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir.

2004). In this case, based on the facts alleged in the amended complaint, it is clear that any further amendment would be futile with respect to the plaintiffs' § 1983 federal civil rights claims against Bloomsburg University and against Hanna, McFarland, and Sheptock in their official capacities. It is not clear, however, that further amendment would be futile with respect to the plaintiff's § 1983 claims against Hanna, McFarland, and Sheptock in their personal capacities,[10] nor is there any basis to believe that such amendment would be inequitable. Therefore, the dismissal of the amended complaint will be with leave to amend.

## IV.  CONCLUSION

For the foregoing reasons, the University Defendants' motion to dismiss will be granted and the plaintiff's § 1983 federal civil rights claims against them will be dismissed for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a

---

[10] The plaintiff has previously amended his complaint once already, but that was done in response to a motion to dismiss filed by the School District Defendants involving different claims and different grounds for dismissal. The plaintiff's claims concerning the University Defendants, however, have not been tested previously. Although the University Defendants also filed a motion to dismiss the original complaint, that motion, which did not itself articulate any basis for dismissal, was rendered moot when the amended complaint was filed, before the University Defendants had an opportunity to file a supporting brief.

claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). The plaintiff's remaining state-law tort claims against the University Defendants and the Student/Parent Defendants will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). However, the amended complaint will be dismissed with leave to file a second amended complaint within a specified time period.

An appropriate order follows.

Dated: September _15_, 2025          _Joseph F. Saporito, Jr._
                                     JOSEPH F. SAPORITO, JR.
                                     United States District Judge